Would you call this third case positive? And would the attorneys who are going to argue that case please step up? And would each of you, just while you're standing, please give us your names, tell us who you represent. Certainly. Good afternoon, your honors. My name is Dennis DeMarco, attorney for the plaintiff of Mullins v. John Hobbs. Good afternoon, your honors. We are here to support the defendant, Ellie Mowatt Mowatts. Okay. As you both probably know, you each have 20 minutes. You do not need to use it. Mr. DeMarco, did you want to save some of that 20 minutes for rebuttal? I will. Five minutes? Five minutes. Okay. And please keep your voices up nice and loud. There are a lot of people here who I'm sure want to hear everything you have to say. Certainly. Whenever you're ready. If it may please the court and counsel, thank you for your time and attention today. We are here today because the trial court's decision barring the plaintiff from rejecting the arbitration award robbed her of her right to a fair trial on the merits of her case. I'm happy to review the applicable law and issues at the court's request, but I want to begin today by discussing the practical reasons for why this issue arose as it did. Defending in this matter contends that the plaintiff failed to participate in the arbitration process in good faith because she failed to subject this matter to the same type of adversarial testing that one would expect at trial. The reasons for this standard are so that the arbitration process is not treated as a roadblock to trial and that the arbitration process is given the same regard that one would give to a trial. However, I want the court to be aware and understand that if this matter had in fact been set for a trial at 830 on March 21, 2018, rather than a mandatory arbitration, I'm confident that this situation would not have happened. First, if this matter had been up for a trial in front of an actual judge, that judge would have the power to grant a continuance before the start of trial. Unfortunately, the arbitration panel does not have such a power, and the only recourse plaintiff had when they were first made aware of the delay that Ms. Hobbs was experiencing was to file an emergency motion for a continuance with the trial court. Additionally... So nothing in the arbitration rules allows the arbitrators to postpone the hearing once the date for the hearing has come? Is that correct? Correct. In Cook County, the most an arbitrator can do is allow a 15-minute grace period. If you look at the mandatory arbitration award, you'll see in fact the hearing started at 850. The arbitrators were nice enough to give us an extra five minutes even, but they do not have the power to continue or reset the arbitration. Additionally, if this matter had gone to trial that day instead of an arbitration, there would have been not only any opening business that the court had to take care of, but also jury selection, opening statements. Ms. Hobbs would have been free to call any number of witnesses. But this was arbitration, so the comparison and the sanction here isn't available at trial. Correct. You can't say whether or not you're going to reject the trial court. I'm not seeing the analogy. Well, the analogy comes from the standard. The standard encourages that arbitration be treated with the same respect as a trial. It has to be a two-way street, though. The court must understand that if this matter had in fact been a trial on the merits, Ms. Hobbs would have arrived in time. The record indicates that she arrived in Chicago at about 1130. Certainly, plaintiff's case in chief would not have been closed by then, and she would have been able to testify. Additionally, I want to encourage the court to – The arbitrators found that she did materially participate, correct? The arbitrators did find that Ms. Hobbs acted in good faith, and that's especially telling when you consider that there was a consolidated plaintiff in this matter, Ms. Lonley Shields, who also did not appear. The arbitration panel did find that Ms. Shields did not participate in good faith, but went through great pains to make a record that Ms. Hobbs was unavailable to attend due to inclement weather, and that they did not find her to act in bad faith. That's especially particularly important when this Court is to consider whether or not Ms. Hobbs violated Rule 91B for failing to participate in good faith. Was this a snowstorm in Chicago or somewhere else along the road from Georgia? The snowstorm took place just over Louisville, Kentucky. It started the night of March 20th. This arbitration took place in the morning of March 21st. Ms. Hobbs drove from Meadow, Georgia and basically took I-65 through Atlanta, through Nashville, then through Louisville, Indianapolis, into Chicago. Records indicate that the storm was centralized over Louisville, so she was basically driving into the storm and had to drive out through it. Nobody's objecting to that, correct? There has been no evidence presented by defendant that there was not a snowstorm. All the evidence in the record is in favor of the fact that Ms. Hobbs did in fact encounter the snowstorm and was significantly delayed by it. Now, they said that she could have testified by phone? So, that's not entirely true. In Cook County, you do have the option to testify by phone, but it has to be by order of the Court. Just as the arbitration panel cannot reset or continue an arbitration, they also cannot, on their own, allow a witness to testify via phone. And when the motion to continue the mandatory arbitration was presented at the 9 o'clock emergency motion call, by this point, the arbitration had already begun. We would not be able to get an order before the start of the arbitration allowing Ms. Hobbs to testify by phone. Additionally, at the time of the mandatory arbitration, she was still driving. I can't say exactly if she was in a convenient place to pull over and testify by phone at that point, since we don't know when exactly she would have been called if the Court had, for whatever reason, allowed her to do so. Now, turning to the alleged violation of Rule 237 in this matter, the trial court abused its discretion in this case by barring the plaintiff for two reasons. First off, there's no evidence in the record that the plaintiff acted with pronounced and utter disregard for the rules and the Court. And additionally, the sanction debarring the plaintiff from rejecting was excessive. When a party violates a Rule 237 notice, the Court may bar that party from rejecting an arbitration reward only when that party's conduct demonstrates pronounced and utter disregard for the rules and the Court. Here, there's no evidence of such pronounced and utter disregard, which means that it is an abuse of discretion by the trial court to bar rejection. Now, the plaintiff here willingly and voluntarily subjected herself to inconvenience and expense in order to drive over 13 hours from Georgia to Chicago just to be at her mandatory arbitration in person. She left with enough time to arrive, but for this unexpected snowstorm in late March, and she notified her counsel at the first opportunity she has. She becomes stuck in the snowstorm that evening, and right when our office opened at 8 o'clock that morning, we received a call from Ms. Hobbs informing us of what had happened. And we filed the emergency motion at the earliest available motion call. Fortunately, that's not until a half hour after 8.30 mandatory arbitration starts. Plaintiff's actions demonstrate nothing but regard for the rules and the Court. And when this Court compares the plaintiff's actions with those of barred parties in cases like Bachman, Trujillo, Gebbie, Hinkle, Williams, and Geico v. Smith, in each of those cases, the barred parties never provided an excuse for their violation of Rule 237, and the Courts found that the barred parties were, based on their actions, only viewed the arbitration process as another step in getting to trial. No one who views arbitration as just a roadblock to trial is going to drive 13 hours to be there in person. Indeed, the plaintiff's actions are much more similar to those in Gore v. Martino, and particularly Johnson v. Sinas. I will remind the Court that in Johnson v. Sinas, though the plaintiffs did arrive before the conclusion of the arbitration, their case-in-chief was already over. They blamed their 40-minute late arrival on heavy traffic. Heavy traffic is a much more likely and much more common experience in Cook County than a snowstorm in late March in Kentucky. But nonetheless... I don't know if we can take judicial notice of that. But nonetheless, the Court found that that was still an abuse of discretion on the trial court's part, because nothing about the Johnson plaintiff's conduct demonstrated utter and pronounced disregard for the Court and the rules. Additionally, as I stated, the sanction was excessive. As this Court ruled in Nationwide Mutual v. Cogut and State Farm v. Kazakova, barring a party from rejecting an arbitration award, particularly a plaintiff, is effectively a dismissal of that plaintiff's entire case. When plaintiff's counsel moved to continue the arbitration proceeding with the trial court, the Court had a number of options available to it, most notably suspending the arbitration process until later on in the day when Ms. Hobbs could arrive, or granting defendants fees and costs for the arbitration hearing when plaintiff ultimately rejected the award against her. Instead, this Court entered the harshest sanction available to it, with no evidence to support that sanction. Lastly, in regards to the alleged failure of the plaintiff to participate in good faith in violation of Rule 91B, this Court has held in West End Mutual v. Herrera that a trial court must have either a finding of bad faith by the arbitration panel or a transcript of the arbitration proceedings on which to determine that a party has acted in bad faith. In this case, there was a finding of good faith by the arbitration panel, and no record was submitted by the defense. The few cases where this Court has found that it is not an abuse of discretion to bar a party from rejecting, in the absence of those two things, a bad faith finding or a transcript of the proceedings, have been cases such as Goldman v. Dillon, as well as Hinkle v. Williams, which were cases where the barred parties not only violated a Rule 237 notice, but they failed to submit any evidence. They didn't call any witnesses. All they did was cross-examine the other party and give opening and closing remarks. Here, Hobbs' counsel did present evidence by way of an IDC submission, as well as a direct examination of the defendant in her case in chief, as well as the presentation of opening and closing arguments. In conclusion, what we ask in this matter is that the plaintiff does not seek to go back to arbitration. She merely wants her day in court and a fair trial on the merits of her case. The trial court abused its discretion by debarring the plaintiff from rejecting, solely because she missed the hearing due to factors entirely outside of her control. Therefore, we ask that you reverse the trial court's order debarring the plaintiff from rejecting the decision of the arbitration panel and remand this matter for trial. If there are no further questions, I will reserve the remaining time. Thank you. Good afternoon, Your Honors. I'd like to make some corrections on the record of the facts that were just presented. Before Your Honors, first of all, the most significant is there's actually no express good faith finding by the arbitration panel. What there is a finding of is that there was no bad faith finding. That's a significant distinction, because there was no good faith, which would have perhaps given the plaintiff a prima facie indication of good faith, but that's not what was found. Simply what was found was that she did not participate in bad faith. As you know, if the following of the motion, good faith. I'm sorry? The following of the motion in the circuit court, she filed an emergency motion. The counsel filed an emergency motion. The earliest they can get in, because the circuit court isn't available until 9 o'clock, but they responded as soon as they got the information. So that was good faith. The attorney appeared and participated. They sent an attorney to the trial court, an attorney to the arbitration. Sounds like good faith to me. As Your Honor is aware, that first of all, the mere absence of a bad faith finding is not dispositive, nor is it a prerequisite to a finding for a motion to bar. That's the State Farm v. Jazz Pass, Barber v. Barbosa. But more significantly, the actions that the plaintiff took the morning of the arbitration is not necessarily indicative of good faith. Is the standard good faith? Or is the standard that the noncompliance was reasonable or a result of extenuating circumstance? So we're looking at two different Supreme Court rules. The Supreme Court Rule 237 is the one that you're referring to in terms of an extenuating circumstance. The rule about good faith participation is under Supreme Court Rule 91B, which is also significant because there is a, in the appellate's brief, there is a contention that the trial court did not make clear under which Supreme Court rule it ruled to bar the plaintiff. But the trial court made it clear that it could not imagine or reason that this is the way the plaintiff would have proceeded at trial. That's an insinuation, an indication that this was found under 91B, which is what the standard is for good faith participation. As far as- They also presented a 90C packet, correct? I'm sorry? They also presented a 90C packet, correct? They did present a 90C packet. No evidence of good faith. The 90C packet, along with near cross-examination, this Court has found is not necessarily enough to satisfy what would be expected at trial. That was found in State Farm v. Kolsak. It was also echoed in the second district case, which is Martinez v. Gaimari. The Court has ruled on that repeatedly. Just the submission of a 90C packet, that's not enough to come up to the threshold of good faith necessarily. How is this different from State Farm v. Kazakawa? I'm sorry, State Farm what? V. Kazakawa, Kazakova. You're not familiar with it? That's where the person couldn't speak any English? Oh, that one. Because he couldn't speak any English, he wasn't able to participate, he couldn't answer any questions, he couldn't be cross-examined, and the Court found that that was not bad faith participation. He didn't provide an interpreter, and so she had her attorney there. To me, this is all evidence of good faith. Your Honor, the plaintiff actually does cite a series of cases that deal with specifically a language barrier. That is one of those cases, State Farm v. Kazakawa. The significant difference between Kazakawa and this scenario is Kazakawa, the Court found a defendant or a party, it cannot be held against them that they cannot speak English. That's not the situation here. The plaintiff, this was her case in chief, she resided somewhere between 13 to 16 hours away from the arbitration hearing. There's no indication actually in the affidavit as to what time she actually left the state of Georgia. The affidavit itself is quite telling in how vague it is that it is lacking in her intent to show good faith participation. The plaintiff says that on the morning of that date, March 21st, I was driving from my home in Georgia to Chicago. I don't know what that means other than on that morning, she was on the road from Georgia to Chicago. Where was she on the road from Georgia to Chicago? Did she leave Georgia that morning, which would have made it impossible for her to make it to an arbitration hearing in Cook County? This argument was made at the time of the motion to bar, and then the plaintiff brought a subsequent motion to reconsider. They never perfected this affidavit to explain that. Further, there was an argument made that she notified her attorney the morning of that she would not be able to make it in time. That's actually not what's stated in the affidavit. The affidavit states, my attorney, James Garfield, called me at 8 o'clock that morning. That is significant, Your Honors, because it's similar to the case in Martinez, where the appellate court found that... It sounds like he was returning to a phone call. Well, what it sounds like, Your Honor, is speculating... ...that James Garfield called me at 8 that morning. I informed him that I was still in Indiana and had several more hours driving before I would arrive as a result of the snow delay. That's what's on the face of this affidavit. That is analogous to the case in Martinez, because the court found that the offending party, the defendant, didn't present an excuse until she was presented with the possibility of being barred. And that's a similar situation here. At 8 a.m., it's 30 minutes before the arbitration. It's common practice in Cook County that when you are going into arbitration, the attorneys meet their clients 30 minutes before. At that moment, their attorney called the plaintiff when they were informed that she would not be able to make it. At that time, they did bring an emergency motion, but in that emergency motion, they did not ask for leave to have the testimony via telephone. The argument that was just made was, we don't know where she was at the time on the road. This, again, goes to her intent of good faith participation. It's a plaintiff's case. She should have been able to convey to her attorney where she is on the road so that she could pull over. The plaintiff cites Gore v. Martino. In Gore, the plaintiffs showed up at the arbitration 45 minutes late, after the plaintiff's case and they had rested, but they showed up. She never showed up here. To make it at all, it ended at 10 shortly after 10, right? She showed up at 11-something, right? Your Honor, she did not show up at the arbitration center. The affidavit says she showed up in Chicago. That's a significant difference. We do not know what that means. But Chicago, we do know the arbitration ended, because it says in the award at 10.05 or something that morning. Yes, Your Honor, yes. But again, she did not appear at the arbitration. Showing up at Chicago at 11-30 is irrelevant for the purposes of this hearing, for the purposes of this case. When she showed up in Chicago, where she showed up in Chicago, does not go to the fact that she failed to appear at the actual arbitration. That's the difference between Gore and this particular circumstance. Your argument wouldn't be different if she had showed up at the arbitration center at 11-30 anyway. You would be making the exact same arguments here. She would have shown up at 11- I don't know what I would have argued at that point, Your Honor, to be honest with you. I don't know. If she showed up at 11-30, I'm sure I would have found an argument, but I don't know if it would have been the exact same one. In this scenario, simply, she didn't show up. The Gore case deals with the possibility of what happens in the event of tardiness. There's no tardiness here. She just simply didn't appear. That's the significant difference. Also, it should be of note, the appellant cited to a case, Johnson, the same as- excuse me, it takes a breath for a second here. I don't want to take up more time. In Johnson, the plaintiff just argued that there was heavy traffic. That's incorrect. Johnson's a case that took place out in Rockford. It's a case dealing with, again, a language barrier. The defendant, Bainese, was sitting in the courtroom, did not have the ability or didn't understand where she had to be. That's a misquoted case. Johnson is significantly different than here. Johnson, again, is a case where the defendant could not speak English. This court has found cannot hold it against the party if they can't speak English as to be bad faith. The plaintiff has failed to show what exactly was the extenuating circumstance that prevented her from appearing. There is an argument that she was in a storm, and there was a question asked of whether or not there was an objection. There's actually no evidence offered by the plaintiff that that storm actually occurred. This was an issue that was argued at the time of the motion to bar, was again argued at the time of the motion to reconsider. Something as simple as a governmental website would have indicated where and when was this storm. There's no indication of whether this party, this plaintiff, was in the storm at what time. There's no indication, again, of what time she left the state of Georgia, what time she was bordering the state of Illinois. There is a contention that she was still hours away in Indiana. Where was she in Indiana before the arbitration? And none of these indicate that she had an intention to participate in good faith. Significantly, there was an arbitration that was scheduled on her case at 830 in the morning in the city of Chicago in Cook County, potentially 16 hours away from where she lived. At a trial, you cannot possibly have asked a trial court judge to hold over a jury indefinitely  The idea that the arbitration panel could not continue the arbitration, that is a correct statement. However, a judge could continue the arbitration hearing. The judge heard a motion and denied it because of the timeliness. Similarly, was it the same judge? Just out of curiosity. It was not the same judge. Okay. The judge could have heard and could have considered having the plaintiff testify over the telephone. And even if the plaintiff's attorney failed to ask that, the plaintiff could have still had her testify over the telephone. The defense then would have had, obviously, a right to object. And that would have created a whole different issue and would have made it analogous to Gore. That's not what happened. Simply, she just didn't appear. Even if you found, by the way, that there is an extenuating circumstance, despite the complete vagueness of this affidavit, even if you find that at the 237 there was an extenuating circumstance, the plaintiff still fails according to 91B. Just simply saying that a 90C was presented in a cross-examination, this court has held repeatedly, that's not enough. That's not what the definition of adversarial testing or trial would be. The one in the case that's most akin to that, obviously, is State Farm v. Koselnik. And it also, the court there talks and similarly quotes Martinez v. Gaimari. In Martinez, the defendant, who failed to appear at the arbitration, had an extenuating, possibly, the court never found it had an extenuating circumstance, but she had a sick child who was in the emergency room on the morning of the arbitration. But the court found that even though she could have maybe had an extenuating circumstance, you can't proceed to trial that manner. It's the same thing here. There was just no indication that this plaintiff actually intended to proceed in a good faith manner. And so, therefore, there's no basis, the court has presented, that would disturb the trial court's finding. Absent an abuse of discretion, the trial court's decision on barring the rejection of the arbitration award cannot be disturbed. There's no indication that the trial court acted in an arbitrary or fanciful manner or unreasonable. The trial court made it clear that it could not imagine this is the way that the plaintiff would have proceeded at trial. Absent that abuse of discretion, that decision of the trial court cannot be disturbed. There was a discussion about the other plaintiff in a consolidated manner who had a good faith finding. In that scenario, the distinction indicates then that there is a good faith finding for Tameka Hobbs. It's actually incorrect. Lenise Shields, who was the other plaintiff, she didn't appear herself, nor through counsel. And that's the difference. It's why there was a bad faith finding. And, again, it must be of note that there's been an entire discussion and indication or implication that there was a good faith finding. There was not. It was simply that Tameka Hobbs did not participate in bad faith. Well, it went on beyond that. And it's such a period by counsel, bad weather. The actual order didn't have more facts. The order just reiterated what was told through counsel. There was no... Well, they knew that counsel was there. They told them that. Right. But the arbitration panel, what their findings is, is merely suggestive. It is in the power that resides within the court. And the trial court saw and read and knew that there was bad weather. Despite that, the trial court found there was no good faith participation. As Your Honor is aware, even if there had been an express finding of good faith participation, it's not a... I'm sorry, a lack of a bad faith. That's not a prerequisite in order for a motion to bar to prevail. And that's what the trial court did. And the defense argues simply that, again, there was no abuse of discretion. When the trial court ruled, the trial court ruled it appears under the 91B. Even if you were to find extenuating circumstances, which that cannot be, the thresholds cannot have been met, simply because there's just not enough facts to support that there were extenuating circumstances. It's extremely vague. They still fail under the standard that's been established for a 91B, good faith participation. If there's no further questions, I thank you all for your time. Okay. The counsel argues for a de novo review. And you want to respond to that? That is incorrect. The de novo review I think that the plaintiff has referred to is the case that he cites has to do with... I think it's Stakeline v. Kosovo. Same case. Same case. And that case is because there's a question of law. And the question of law there is whether or not the defendant failed to provide an interpreter was correctly done. There are also, I think, constitutional issues in that particular case. It could be confusing two cases. But there's no reason for... The de novo review is not correct here because the only issue really that is before... that should be before, Your Honors, is that whether or not the plaintiff failed to comply with 237 or 90G or 91B, which has to deal with the bond. We're not clear which statute the trial court relied upon. Well, we're not clear... So it sounds like the trial court may not even realize that there was discretion here. If the trial court didn't realize there was discretion, that would be an abuse of discretion. First of all, the court, even if it's not clear in its ruling, that's not enough to change... I mean, to reverse a ruling by the trial court. It can be used to not necessarily grant deference to the court. But here, the court does say that the language the court uses in the motion to reconsider is that it cannot imagine proceeding this way at trial, which is language that comes directly from the 91B. It is reasonable, then, to ascertain that the court's intention was to find or to bar the plaintiff based on a 91B finding. Therefore, that suggests the standard of review to abuse of discretion. Anything else? Okay. Thank you, counsel. Thank you, Your Honors. If it may please the court and counsel, I'll begin by addressing the de novo issue that was just raised. As counsel herself argued towards the beginning of her presentation to this panel, there is two standards at play here, the standard that's applied to a violation of Rule 237 and a standard that's applied to a violation of Rule 91B. Now, the case law is clear that the failure of the trial court to lay out the specific reason for its granting of a Rule 219C sanction is not per se worthy of the order being overturned. It is up to the court yourselves to determine if, based on the record, you can understand what the trial court's reasoning is. Since, in fact, there are two standards here and they were not laid out, it is before the court to determine whether or not they can deduce what standard the trial court was applying when it granted this sanction. Counsel states that we cite a series of cases that involve a language barrier issue. It's two, Kazakova and Johnson. Kazakova we cited specifically for its standard that were at play here, not necessarily because the facts are entirely on point, but more so for the standard. Johnson is particularly important in this matter. It's a second district case. In Johnson, just as in this matter, the plaintiff failed to appear at all at the arbitration. Her attorney actually ran into her in a courtroom later on in the day and through a conversation with the party determined that she had been unable to appear at the arbitration because she'd gotten confused due to language issues. Johnson plaintiff also did not appear at her mandatory arbitration like Hobbs and it was found to be an abuse of discretion to bar her from rejecting. Counsel also argues that in our motion to reconsider, we did not perfect Ms. Hobbs' affidavit to provide more accurate information to the court. Unfortunately, it was a motion to reconsider. We couldn't present new facts to the court at that point. However, this court has the entire record before them. I would encourage you to look at my own affidavit on page A7 of our brief. Point 3 there indicates that on March 21, 2018, at approximately 8 a.m., Anika Hobbs made her attorney's office aware that while driving to Chicago from her home in Meadow, Georgia, during the previous night, she had gotten stuck in a snowstorm. I think when this court looks at the evidence from both the affidavit submitted in the emergency motion as well as the affidavit from Ms. Hobbs herself, there is substantial evidence in the record to indicate that there was no basis for the court to find that Ms. Hobbs had acted in bad faith. While we're on the issue of bad faith versus good faith, counsel wants to present that somehow you can not be acting in bad faith, but also not be acting in good faith, that there's some medium. I don't know that there's any case law to support that finding, but I would encourage the court to look at the mandatory arbitration award. You're going to see that on the form award, there's a box that the arbitrators can check stating all parties acted in good faith. And then they note whatever exceptions to that they find. Correct, correct. And that's the only finding they make. Right. And they made a finding as to another party, but not as to your client. Correct. Clearly they could not check the box in this case because Lonnie Shields, due to her failure to appear, was certainly not in good faith. So there are two different, I mean, this is my ignorance, but they don't make this person acting in bad faith with this person acting in good faith. They say they make a finding of no good faith, essentially. That's the finding that they generally make? It's really the finding they generally make is they can check the box that all parties participated in good faith, or they can check a box for the plaintiff's name did not participate in good faith based on the following findings. And specifically they checked for Plaintiff Lonnie Shields, and then they proceeded to note that, well, Ms. Hobbs did not appear in violation of Rule 237. She was represented by counsel, and they did not. We say we do not find bad faith, but they didn't specifically say we find good faith. Correct. But to your knowledge, that's not really a difference. I'm not aware of any case law that states that there's some middle ground between good faith and bad faith. Well, actually they do. They could have checked the box that says did not participate in good faith. So the box that's being checked means that the parties did not participate in good faith. So if they're not checking that she did not participate, that she did not participate in good faith, they're saying that she did not. I'm sorry. They're saying the other party did not. Correct. They didn't say that she did not participate in good faith. Correct. Which leaves one to believe that she did participate in good faith. I would agree. Okay. Counsel brought up the case of Gamari before the court in regards to the fact that this is a similar circumstance because while the barred party in Gamari had a good reason for not showing up to the arbitration, her sick child, she was still barred, and the court affirmed that barring order. The difference is that in Gamari, that reason for not appearing at arbitration wasn't presented before the arbitration, it wasn't presented at the arbitration, and it wasn't presented until after the motion to bar was filed. Here, the very first opportunity Hobbs and her counsel had, they made the court aware of the reasons that she would not be appearing. Therefore, in conclusion, I would once again ask that this court overturn the decision of the trial court and reverse that barring order and remanding this case for trial. I thank you for your time and attention. Just real quick. Absolutely. I know Judge McIntyre asked this question earlier, but the judge that they appeared before on an emergency basis on the day of the arbitration hearing, who was that judge? That judge was Catherine Schneider. She's the judge who typically sits in the courtroom and hears these types of motions that are all related to the arbitration. She did deny the motion to continue based on timeliness. She was not, however, the judge who ruled on the motion to bar. That was Judge John O'Meara, who has since retired. He was basically filling in for Judge Schneider the day that defense's motion to bar was presented. Thank you. Okay. Thank you. Thank you. Thank you both. We will take this under advisement. We're going to take a brief recess.